Carlos AGUILAR, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–04–00181–CR.

Court of Appeals of Texas, Waco.

July 26, 2006.

Discretionary Review Refused Nov. 22, 2006.

Doug M. O'Brien, Moen Cain & O'Brien, Houston, for appellant.

Charles A. Rosenthal, Jr., Harris County Dist. Atty., Houston, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Carlos Aguilar of failure to stop and render aid. The court assessed Aguilar's punishment at five year's imprisonment, suspended imposition of sentence, and placed him on community supervision for five years. Aguilar contends in his sole point that the evidence is legally and factually insufficient to support the verdict because: (1) it was not apparent that treatment was necessary for the person in the other car involved in the collision; (2) the State did not prove that he did not call for assistance; (3) he was himself injured in the collision; and (4) he did not leave the scene until someone else had arrived. We will affirm.

## Background

The indictment alleges that Aguilar was involved in a collision resulting in injury to Jason Myers and that Aguilar failed to remain at the scene and provide reasonable assistance to Myers "including the making of arrangement for carrying [Myers] to a physician and hospital for medical and surgical treatment."

According to the testimony, Myers and Aguilar were involved in a head-on collision. Aguilar's airbag deployed, and he was spared serious injury. Myers's foot became caught between the gas and brake pedals of his car, and his car sustained damage such that the driver's door could not be opened.

Aguilar, a paramedic, came to check on Myers. Myers testified that he told Aguilar he was not okay and he thought his leg may be broken. Aguilar tried to make a call on his cell phone, but he dropped the phone in Myers's car and lost the antenna. Aguilar entered Myers's car via the front passenger door and retrieved his phone. Myers testified that he was "in severe pain at the time." Aguilar never checked Myers's pulse, asked him about his leg, or examined it to see if it was broken. After about two minutes, Aguilar left Myers's car and walked to a nearby business. Aguilar told Myers "he was going to call someone." Myers later saw Aguilar walk out of the business but did not otherwise see him again.

Myers testified that Aguilar "didn't seem like he was all there" and that his eyes were "glazed over." However, Aguilar appeared "fine and dandy" otherwise and was "walking about normally." Aguilar did not complain to Myers of any injury.

Myers testified that another car arrived within minutes after Aguilar left, and the driver of this other car called 9–1–1. According to Myers, an emergency room physician determined that he had not suffered a broken leg but had a "severe cut along [his] ankle." The injury was bandaged, and Myers was released on crutches with prescriptions for an antibiotic and a pain killer.

Paramedics with the fire department removed Myers from his car after forcing the door open with the jaws of life. Fire

department records and hospital records from the incident both indicate that Myers had a 3–inch laceration on his ankle. Neither of these records indicate that Myers said he thought his leg was broken. Rather, they both essentially indicate that Myers complained of pain in his ankle. The hospital record also indicates that Myers was "in no apparent distress" when admitted.

Sean Schubert, an acquaintance of Aguilar's, testified that he was at the home of Aguilar's girlfriend with other friends that evening. Aguilar called and told his girlfriend that he had been in an accident. Schubert agreed to go get Aguilar because the girlfriend appeared "panicked" based on her conversation with Aguilar. The scene of the collision was less than two miles away. When Schubert arrived, Aguilar approached him in the street and asked to go to the hospital. According to Schubert, Aguilar was "walking just fine" but had "some redness to his face."

Schubert asked Aguilar if everyone else involved was okay. Aguilar replied that he had checked on Myers, who "had a scratch on his leg" but "was fine." Schubert saw someone else walking around in the area, and Schubert assumed this was the driver of the other car. There were no emergency personnel on the scene at the time. Aguilar never said that he had called 9–1–1 and never asked to use Schubert's cell phone.

A police officer who responded to the scene testified that Myers "didn't look good" based on an "anxious look" on his face. The officer characterized Myers's injury as a "long, deep gash."

### Applicable Law

An operator of a vehicle involved in an accident resulting in injury or death commits the offense of failure to stop and render aid if he does not:

(1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;

(2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and

(3) remain at the scene of the accident until the operator complies with the requirements of section 550.023.

*See* Tex. Transp. Code Ann. §§ 550.021 (Vernon 1999); *McCown v. State*, 192 S.W.3d 158, 162 (Tex.App.-Fort Worth 2006, pet. filed); *St. Clair v. State*, 26 S.W.3d 89, 98 (Tex.App.-Waco 2000, pet. ref'd).

Section 550.023 requires the operator of a vehicle involved in an accident which results in injury or death to:

- give his name and address, the registration number of his vehicle, and the name of his liability insurer to any others involved in the collision;

- show his driver's license to anyone involved in the collision, if requested; and

- "provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation."

*See* Tex. Transp. Code Ann. § 550.023 (Vernon 1999); *St. Clair*, 26 S.W.3d at 98.

When reviewing a legal insufficiency complaint, we consider all the evidence in the record and ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Moff v. State*, 131 S.W.3d 485, 488 (Tex.Crim.App.2004) (quoting *Jackson v.*

*Va.,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ When reviewing a factually insufficiency complaint, we ask whether the evidence supporting the verdict is "too weak to support the finding of guilt beyond a reasonable doubt" or whether the contrary evidence is so strong "that the beyond-a-reasonable-doubt standard could not have been met." *See Zuniga v. State,* 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004).

### Contentions

Aguilar's brief does not clearly state which elements of the State's case he is challenging. *See Turner v. State,* 4 S.W.3d 74, 80–81 (Tex.App.-Waco 1999, no pet.).[1] Despite the technical shortcomings of Aguilar's brief, we will in the interest of justice consider the issues presented. *See* TEX.R.APP. P. 38.9; *Turner,* 4 S.W.3d at 81; *see also Perez v. State,* 113 S.W.3d 819, 837–39 (Tex.App.-Austin 2003, pet. ref'd); *Gallegos v. State,* 76 S.W.3d 224, 228 (Tex. App.-Dallas 2002, pet. ref'd).

Aguilar sets out the heart of his contentions in the last two pages of his brief. There, he contends: (1) "appellant correctly assessed the medical condition of Mr. Myers that it was not apparent that treatment was necessary";[2] (2) "The state never presented any evidence as to the source of the call for emergency assistance, therefore, it was not proved by the state that the call was not made by the appellant";

(3) "the air bag deployed in the appellant's vehicle causing the appellant to be injured;" and (4) Aguilar "requested to be taken to the hospital only after at least one other person had arrived at the scene to be present with Mr. Myers."

### Apparent Necessity of Treatment

■ Aguilar's first contention challenges the legal and factual sufficiency of the evidence to prove that it was apparent to him that treatment was necessary. *See* TEX. TRANSP. CODE ANN. § 550.023(3); *McCown,* 192 S.W.3d at 162.

Aguilar and Myers were in a head-on collision. Aguilar is a paramedic. Myers testified that he told Aguilar he thought his leg was broken but Aguilar never examined his leg (or any part of Myers) to evaluate the extent of his injuries. Aguilar stayed with Myers for about two minutes. Myers testified that he was "in severe pain" and that Aguilar told him "he was going to call someone." After evaluation by medical personnel, it was determined that Myers had suffered a 3–inch laceration on his ankle which was treated without stitches but which was severe enough to warrant prescriptions for an antibiotic and a painkiller. A responding officer testified that Myers "didn't look good" and that he had a "long, deep gash" on his ankle.

Viewing this evidence in the light most favorable to the State, we hold that a

---

1. In *Turner,* this Court observed:
   A brief asserting legal or factual insufficiency of the evidence is helpful when it focuses our attention on the disputed issues, specifies each element of the crime or cause of action, and specifies which element lacks evidentiary support. The brief should contain a discussion of the relevant evidence and why that evidence is not sufficient.
   *Turner v. State,* 4 S.W.3d 74, 80–81 (Tex.App.-Waco 1999, no pet.); *accord Perez v. State,* 113 S.W.3d 819, 837 (Tex.App.-Austin 2003,

pet. ref'd); *Gallegos v. State,* 76 S.W.3d 224, 228 (Tex.App.-Dallas 2002, pet. ref'd).

2. Aguilar also observes that Myers did not call 9–1–1 himself even though he had his own cell phone. We construe this as a contention that the fact that Myers did not call 9–1–1 constitutes evidence that Myers himself knew his injuries did not require treatment. We will address this in connection with Aguilar's more general contention that it was not apparent that Myers required treatment.

rational juror could have found beyond a reasonable doubt that it was apparent to Aguilar that Myers required treatment. *See McCown*, 192 S.W.3d at 163–64.

As Aguilar suggests however, the record also contains controverting evidence on this issue. Myers did not use his own cell phone to call 9–1–1, from which the jury could infer that Myers did not consider his injuries to be that serious. The fire department and hospital records do not affirmatively indicate that Myers complained of a possible fracture, and as it turned out, he did not have a fracture. The hospital records indicate that when Myers was admitted he was "in no apparent distress." Aguilar told Schubert that he had examined Myers and determined that he had only "a scratch on his leg" and "was fine."

From this controverting evidence, the jury could have determined that it was not apparent to Aguilar that Myers required treatment. However, the jury determined otherwise. We cannot say that this controverting evidence is so strong "that the beyond-a-reasonable-doubt standard could not have been met." *See McCown*, 192 S.W.3d at 163–64; *see also Zuniga*, 144 S.W.3d at 485.

Accordingly, the evidence is legally and factually sufficient to support the jury's determination that it was apparent to Aguilar that Myers' required treatment.

## Call for Assistance

■ Aguilar next contends that the State failed to prove that he did not call for emergency assistance. We construe this as an assertion that the evidence is legally and factually insufficient to prove that Aguilar failed to "mak[e] arrangements for transporting [Myers] to a physician or hospital for medical treatment." *See* Tex. Transp. Code Ann. § 550.023(3).

Myers testified that Aguilar told him "he was going to call someone." Within minutes after Aguilar left, another driver arrived who promptly called 9–1–1. Aguilar called Schubert and later asked Schubert to take him to the hospital. Aguilar told Schubert that Myers "was fine." Aguilar never told Schubert that he had called 9–1–1. There were no emergency personnel on the scene when Schubert arrived. It is not clear from the record whether more than one call was placed to 9–1–1 regarding the collision.

Because Aguilar told Schubert that he thought Myers was fine and because Aguilar did not tell Schubert that he had called 9–1–1, the jury could infer that Aguilar did not call for emergency assistance. Viewing this evidence in the light most favorable to the State, we hold that a rational juror could have found beyond a reasonable doubt that Aguilar failed to "mak[e] arrangements for transporting [Myers] to a physician or hospital for medical treatment."

Aguilar's contention here rests primarily on the absence of affirmative evidence that he did not call 9–1–1. This is essentially a contention, for factual sufficiency purposes, that the evidence is "too weak to support the finding of guilt beyond a reasonable doubt." *See Zuniga v. State*, 144 S.W.3d at 484. We disagree.

Accordingly, the evidence is legally and factually sufficient to support the jury's determination that Aguilar failed to "mak[e] arrangements for transporting [Myers] to a physician or hospital for medical treatment."

## Knowing Conduct

■ Aguilar next contends that the evidence is legally and factually insufficient because he suffered injury himself as a result of the collision. We construe as a contention that the State failed to prove

that Aguilar "knowingly" failed to stop and render aid.[3]

■ To prove the defendant acted knowingly in this type of case, the State must prove the defendant "had knowledge that an accident had occurred." *Goss v. State*, 582 S.W.2d 782, 785 (Tex.Crim.App. 1979); *St. Clair*, 26 S.W.3d at 98.

Here, Aguilar knew that he had been involved in a collision with Myers. He also knew that Myers had at a minimum suffered minor injury as a result. He asked Myers if he was okay, indicating that he understood his obligations under the circumstances. Viewing this evidence in the light most favorable to the State, we hold that a rational juror could have found beyond a reasonable doubt that Aguilar knowingly committed the offense charged.

The contrary evidence is that Aguilar may have suffered a head injury as a result of the collision. In fact, Aguilar initially asked Schubert to take him to the hospital, though he ultimately changed his mind and went home. We cannot say that this contrary evidence is so strong "that the beyond-a-reasonable-doubt standard could not have been met." *See Zuniga*, 144 S.W.3d at 485.

Accordingly, the evidence is legally and factually sufficient to support the jury's determination that Aguilar acted knowingly.

### Remaining at the Scene

■ Aguilar finally contends that he remained at the scene until "at least one other person had arrived at the scene to be present with Mr. Myers." We construe this as an assertion that the evidence is

legally and factually insufficient to prove that he failed to "remain at the scene of the accident until [he had] complie[d] with the requirements of section 550.023." *See* Tex. Transp. Code Ann. § 550.021(a)(3).

We have already listed the requirements of section 550.023. The only requirement which Aguilar is alleged to have failed to comply with is the requirement that he "provide any person injured in the accident reasonable assistance." Id. § 550.023(3). This requirement does not mean that a person involved in a collision which results in personal injury to another must personally transport the injured person to a hospital, particularly when the person's own vehicle has been damaged. However, this requirement at a minimum means that such a driver must remain at the scene until emergency personnel or someone whom the driver knows is capable of providing emergency medical assistance has arrived at the scene.

Here, Schubert testified that he saw "someone" walking around near the scene of the collision. Schubert thought it was the other driver, Myers. No emergency personnel were on the scene. Conversely, there is no evidence in the record that Aguilar himself had determined that this "someone" was an official responding to the collision or a person capable of providing emergency medical assistance to Myers.

Therefore, we conclude that the evidence is legally and factually sufficient to prove that Aguilar failed to "remain at the scene of the accident until [he had] complie[d] with the requirements of section 550.023."

---

3. Perhaps, injuries sustained by a person in Aguilar's position could give rise to the necessity defense. *See* Tex. Pen.Code Ann. § 9.22 (Vernon 2003). However, Aguilar did not seek an instruction in the charge on this defense and does not complain on appeal that the defense applies.

Accordingly, we overrule Aguilar's sole point and affirm the judgment.