In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-05-00244-CR


______________________________




RAYMOND MICHAEL JACQUES, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law #1


Gregg County, Texas


Trial Court No. 2004-5601




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Around midnight March 13, 2004, Raymond Michael Jacques had a one-vehicle accident at
the 3500 block on Highway 259 in Kilgore, Gregg County, Texas. Officer Brady Lee Middlebrooks
of the Kilgore Police Department was dispatched to the accident scene. When Middlebrooks made
contact with Jacques, the officer smelled alcohol on Jacques' breath. Middlebrooks suspected
Jacques may have been intoxicated, but the officer neither arrested Jacques or conducted any field
sobriety tests, nor did Middlebrooks remove Jacques' motorcycle helmet out of fear that Jacques had
injured his neck in the accident. After paramedics arrived, Jacques himself removed his helmet and
initially refused medical treatment at the scene. A short time later, however, Jacques changed his
mind and asked to be taken to the hospital. At the hospital, medical personnel conducted various
tests, including a blood-alcohol test. Jacques was later released and sent home to recover.

 On March 30, 2004, the State obtained a grand jury subpoena for Jacques' hospital records. 
Jacques' blood test revealed that Jacques' blood-alcohol level on the night in question was 181.5
milligrams per 100 milliliters of blood--an amount more than twice the legal limit. See Tex. Penal
Code Ann. § 49.01(2)(B) (Vernon 2003). Jacques' medical records also included additional
notations (made by the paramedics, nurses, and doctors who treated Jacques) indicating the treating
medical professionals believed Jacques had recently ingested alcohol. 

 Armed with these medical records, the State charged Jacques with driving while intoxicated. 
See Tex. Penal Code Ann. § 49.04 (Vernon 2003). Jacques moved to suppress the blood test
results obtained by the State, a motion which the trial court denied. A jury later found Jacques guilty
of this misdemeanor offense. The trial court sentenced Jacques to 180 days' jail confinement and
a fine of $1,500.00, suspended imposition of the sentence, and placed Jacques on community
supervision for one year. Jacques now appeals, raising six issues. We overrule each and affirm the
trial court's judgment.

I. Denial of the Motion to Suppress the Blood Test Results

 Jacques' first and second appellate issues concern the trial court's denial of his motion to
suppress the blood test. At a hearing on a motion to suppress evidence, the trial court is the sole and
exclusive trier of fact and the judge of the credibility of witness testimony. Allridge v. State, 850
S.W.2d 471, 492 (Tex. Crim. App. 1991). We review the trial court's ruling on a motion to suppress
under a bifurcated standard of review, giving almost total deference to the trial court's determination
of historical facts and reviewing de novo the court's application of the law. Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000). An appellate court must uphold the trial court's ruling if
it is reasonably supported by the record and is correct under any theory of law applicable to the case. 
State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002) (citing Romero v. State, 800 S.W.2d
539, 543-44 (Tex. Crim. App. 1990)).

 A. Article 38.23 Violation

 In his first appellate issue, Jacques contends hospital officials committed the crime of assault (1)
by taking his blood without his consent; therefore, he contends that, because the blood test evidence
is a product of criminal wrongdoing, Article 38.23 of the Texas Code of Criminal Procedure
prohibits the blood test's admission in a subsequent criminal trial. If the State's evidence is obtained
via the commission of a crime, the trial court errs by admitting that evidence over the defendant's
objection. Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005). 

 The State asserts Jacques has waived this issue for appellate review. When the State offered
the hospital's blood testing results during trial, Jacques objected based on an improper chain of
custody. Jacques did not renew his earlier pretrial objections, including this Article 38.23 claim. 
The trial court overruled Jacques' chain of custody objection, opining that the chain of custody
objection concerns the weight of the evidence, not its admissibility. Jacques then stated he had "[n]o
objection" to the admission of the evidence. 

 If a defendant objects to the admission of evidence during pretrial, but later states he or she
has "no objection" to that evidence's admission, then the defendant waives the admissibility
complaint for appellate review. Sands v. State, 64 S.W.3d 488, 491 (Tex. App.--Texarkana 2001,
no pet.) (citing Dean v. State, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988)). The State is correct: 
When Jacques stated he had "[n]o objection" to the admission of the blood test, he waived the Article
38.23 claim for purposes of appellate review.

 B. HIPAA

 In his second issue, Jacques contends the trial court erred by denying his motion to suppress
because he has a reasonable expectation of privacy in his medical records, the nonconsensual
disclosure of which violates HIPAA. (2) Jacques also argues the State's grand jury subpoena (in form,
substance, and use, as required by Tex. Code Crim. Proc. Ann. art. 20.10 (Vernon 2005)) was
improper. 

 Jacques argued to the trial court that the grand jury subpoena failed to meet the specificity
requirement of HIPAA. Jacques did not contend he had an expectation of privacy in his medical
records. Nor did he assert that the grand jury subpoena form employed by the State failed to meet
the statutory requirements of Article 20.10. Nor did he obtain an adverse ruling from the trial court
on this issue. As such, Jacques failed to preserve this issue for our review. See Tex. R. App. P. 33.1. 

 Moreover, a hospital's release of medical records to law enforcement is permitted under
limited circumstances under HIPAA. 45 C.F.R. § 164.512 (2006). HIPAA specifically authorizes
a hospital to release a patient's medical records in response to a grand jury subpoena. 45 C.F.R.
§ 164.512(f)(1)(ii)(B). Article 20.10 of the Texas Code of Criminal Procedure authorizes the
issuance of grand jury subpoenas:

 The attorney representing the state, or the foreman [of the grand jury], in term
time or vacation, may issue a summons or attachment for any witness in the county
where they are sitting; which summons or attachment may require the witness to
appear before them at a time fixed, or forthwith, without stating the matter under
investigation.


Tex. Code Crim. Proc. Ann. art. 20.10. 

 The State's grand jury subpoena was a document entitled "SUBPOENA" written on the
letterhead of the Gregg County Criminal District Attorney; was signed by an assistant district
attorney; and directed the custodian of medical records for Laird Memorial Hospital in Kilgore to
appear before the grand jury April 21, 2004, and bring "medical records pertaining to Raymond
Michael Jacques (dob: 8/28/72), on or about 3/13/04." The State submitted a copy of this grand jury
subpoena, which was admitted into evidence without objection. 

 We conclude the State's grand jury subpoena complies with Article 20.10's allowance for a
summons to be issued by an attorney representing the State to someone directing him or her to
appear before the grand jury at a specific time. See Tex. Code Crim. Proc. Ann. art. 20.10. The
hospital's disclosure of Jacques' medical records was, therefore, allowable under HIPAA as a
disclosure made pursuant to a properly issued grand jury subpoena. No error has been shown.

II. Ineffective Assistance of Counsel

 In his final four issues, Jacques claims his trial counsel provided constitutionally deficient
assistance. The standard for testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional claims in Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on this claim, an appellant must prove
by a preponderance of the evidence (1) that counsel's representation fell below an objective standard
of reasonableness and (2) that the deficient performance prejudiced the defense. Strickland, 466 U.S.
at 688; Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the
appellant must prove that the attorney's representation fell below the standard of prevailing
professional norms and that there is a reasonable probability that, but for the attorney's deficiency,
the result of the trial would have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App.
2000). Under this standard, a claimant must prove counsel's representation so undermined the proper
functioning of the adversarial process that the trial cannot be relied on as having produced a just
result. Strickland, 466 U.S. at 686.

 Our review of counsel's representation is highly deferential, and we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. Id. at 689;
Tong, 25 S.W.3d at 712. This Court will not second-guess through hindsight the strategy of counsel
at trial, nor will the fact that another attorney might have pursued a different course support a finding
of ineffectiveness. Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979). That another
attorney, including appellant's counsel on appeal, might have pursued a different course of action
does not necessarily indicate ineffective assistance. In the absence of direct evidence of counsel's
reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can
be imagined. Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Nor will we conclude
the challenged conduct constitutes deficient performance unless that conduct was so outrageous that
no competent attorney would have pursued such a course of action. Id.; see also Thompson v. State,
9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

 A. Jacques' Claim of Ineffective Assistance Because Counsel Did Not Object to the
Medical Records under Chapter 724 of the Texas Transportation Code


 In one issue, Jacques contends he received ineffective assistance because his trial counsel
failed to object to the admission of his refusal to submit to a blood test under Chapter 724 of the
Texas Transportation Code. During the pretrial hearing, Jacques did not dispute the assertion that
he was not under actual or constructive arrest at the time Officer Middlebrooks requested a blood
sample (a request that occurred while Jacques was being treated at the hospital). 

 In his brief to this Court, Jacques has not directed this Court's attention to that portion of the
appellate record wherein such information was admitted into evidence without objection from trial
counsel. Nor has Jacques cited any authority for the proposition that someone's refusal to give a
blood specimen, even though the person is not under arrest or otherwise in custody, is patently
inadmissible. Chapter 724 of the Texas Transportation Code requires an officer to give the statutory
warnings only when the person is in custody. See, e.g., Tex. Transp. Code Ann. § 724.011
(Vernon 1999) ("If a person is arrested . . . ."); and Tex. Transp. Code Ann. § 724.012 (Vernon
Supp. 2006) ("One or more specimens . . . may be taken if the person is arrested . . . ."). Chapter 724
appears to be silent regarding what warnings must be given, if any, when the suspect is not in actual
or constructive custody. Additionally, Jacques has not provided this Court with any argument or
analysis under this point of error regarding Strickland's second prong (that, but for trial counsel's
alleged error, the result of the case would have been different). Accordingly, we conclude this
contention has been inadequately briefed and overrule it as such. See Tex. R. App. P. 38.1(h); Bessey
v. State, 199 S.W.3d 546, 555 (Tex. App.--Texarkana 2006, pet. filed); and cf. Gallegos v. State,
76 S.W.3d 224, 228 (Tex. App.--Dallas 2002, pet. ref'd) (factual sufficiency challenge inadequately
briefed as it contained no summary of relevant testimony or citations to record).

 B. Jacques' Remaining Claims of Ineffective Assistance


 Jacques also contends he received ineffective assistance because trial counsel failed to object
to the admission of the blood test results; Jacques contends his trial counsel should have objected
to the results' admissibility under Rule 702 of the Texas Rules of Evidence, under Daubert v. Merrell
Dow Pharms., Inc., 509 U.S. 579 (1993), and under Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App.
1992). Jacques argues the State failed to show (1) that the test's underlying scientific theory was
valid, (2) that the technique applying the underlying scientific theory was valid, and (3) that
laboratory analysts used the proper technique in conducting the applicable scientific tests. 

 Jacques next contends he received ineffective assistance because trial counsel failed to object
to the admission of the medical records. Jacques argues the trial court would have had to sustain an
objection to admission of the medical records, made pursuant to Rule 702, because the State's
predicate was insufficient to establish the reliability of the alcohol testing method, the results of
which appear in the medical records. 

 Finally, Jacques contends he received ineffective assistance because his trial counsel failed
to request a jury instruction that, if the jury found the hospital committed an assault by taking his
blood, then any resulting evidence from that assault could not be considered under Article 38.23 of
the Texas Code of Criminal Procedure. A trial court is required to instruct the jury on the law
applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2006).

 The record before this Court is silent regarding trial counsel's trial strategy. No hearing was
conducted on Jacques' motion for new trial, and his trial counsel did not file an affidavit discussing
any trial strategy. However, there are numerous considerations that might justify trial counsel's
decision not to object to certain evidence, as well as the decision not to request special
instructions--and these strategic choices could be considered a legitimate part of counsel's trial
strategy. Perhaps counsel felt the scientific principle concerning the testing of blood for alcohol
content was so generally accepted in the medical community and by the courts through adversarial
Daubert/Kelly hearings that this trial court could take judicial notice of its validity. See Hernandez
v. State, 116 S.W.3d 26, 29 (Tex. Crim. App. 2003). Trial courts are not required to re-invent the
scientific wheel in every trial. Id. at 29-30. Once some courts have, through a Daubertem>/Kelly
"gatekeeping" hearing determined the scientific reliability and validity of a specific methodology to
implement or test the particular scientific theory, other courts may take judicial notice of the
reliability (or unreliability) of that particular methodology. Id. at 30. When, as is the case here, the
record regarding trial counsel's strategy has been insufficiently developed, then we must generally
conclude the appellant has simply failed to overcome that counsel's decisions were not the product
of sound trial strategy. See Freeman v. State, 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003);
McGill v. State, 200 S.W.3d 325, 332 (Tex. App.--Dallas 2006, no pet. h.). The record before us
does not affirmatively show, by a preponderance of the evidence, that counsel's performance was
sufficiently deficient or that any alleged deficiencies resulted in the requisite level of prejudice to
Jacques' defensive case such that we can conclude the trial below did not produce a just result. 

III. Conclusion

 For the reasons stated, we affirm the trial court's judgment.



 Jack Carter

 Justice

 

Date Submitted: November 30, 2006

Date Decided: December 7, 2006


Do Not Publish
1. See Tex. Penal Code Ann. § 22.01 (Vernon Supp. 2006).
2. HIPAA is the "Health Insurance Portability and Accountability Act of 1996." Pub. L. No.
104-191, 110 Stat. 1936 (1996) (codified primarily in titles 18, 26, and 42 of the United States
Code). See Geissal v. Moore Med. Corp., 524 U.S. 74, 81 n.7 (1998).