**Opinion filed February 21, 2019**



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00043-CR

_____

## SHARLON D. WILLIAMS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 50th District Court**

**Baylor County, Texas**

**Trial Court Cause No. 5498**

## M E M O R A N D U M   O P I N I O N

The jury convicted Sharlon D. Williams of failure to stop and render aid—a second-degree felony—and assessed her punishment at confinement for a term of twenty-five years in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. TRANSP. CODE ANN. § 550.021(a), (c)(1)(A) (West Supp. 2018), § 550.023 (West 2011). Appellant presents three issues on appeal. Appellant

contends that (1) Appellant's right to due process and right to a presumption of innocence were violated when Appellant appeared before the jury in jail clothing, (2) the trial court erred by improperly commenting on the weight of the evidence, and (3) the evidence was insufficient to support Appellant's conviction. We affirm.

*Background Facts*

Appellant, Jefferson Betts (Appellant's husband), Kristi Lavonne Williams Henshaw (Appellant's daughter), and Henry Lee Henshaw (Appellant's son-in-law) went to the Rusty Spur, a bar in Seymour, to celebrate Kristi's birthday. After the bar closed, they returned to the residence where they all lived together. Forty-five minutes later, Appellant returned to the Rusty Spur. Testifying on her own behalf, Appellant stated that she returned to the bar to meet with the owner after the cleaning crew finished cleaning the bar.

Betts subsequently wanted to go look for Appellant. Kristi and Henry dropped him off at a stop sign near the Rusty Spur. Appellant testified that, while she was driving her father's Suburban, Betts "jumped out in front of the Suburban" and she hit him with the vehicle. Appellant stated that she stopped the vehicle to check on Betts. She testified that she attempted to pick Betts up but that she was unable to do so. Appellant left Betts lying in the street and returned home.

Five minutes after Kristi and Henry arrived back at home after dropping off Betts, Appellant arrived there. Appellant asked Kristi and Henry where Betts was, and she asked them to help her find him. Appellant testified that she did not tell them she had hit Betts with the vehicle "because [she] was freaking out." Appellant led Kristi and Henry straight to Betts, who was still lying in the street. Kristi called 9-1-1. EMS took Betts to the emergency room with what ended up being a massive head injury. Betts subsequently died from this injury.

*Analysis*

In Appellant's third issue, she contends that the evidence was legally insufficient to support her conviction for failure to stop and render aid. Appellant does not dispute that she failed to remain at the scene of the accident but asserts that she could not have rendered any aid if she had remained at the scene because it was 2:00 a.m. on a dimly lit street. Appellant asserts that she did everything in her power to render aid under the circumstances in a timely manner. We disagree.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The Texas "failure to stop and render aid" statute reads as follows:

> The operator of a vehicle involved in an accident that results or is reasonably likely to result in injury to or death of a person shall:
>
> (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
>
> (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;
>
> (3) immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and
>
> (4) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

TRANSP. § 550.021(a). The Section 550.023 requirements, referenced in subsection (4) above, are as follows:

> The operator of a vehicle involved in an accident resulting in the injury or death of a person or damage to a vehicle that is driven or attended by a person shall:
>
> (1) give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision;
>
> (2) if requested and available, show the operator's driver's license to a person described by Subdivision (1); and
>
> (3) provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation.

*Id.* § 550.023. Under these statutes, the elements for failure to stop and render aid are that the defendant "(1) [is] a driver of a vehicle (2) involved in an accident (3) resulting in injury or death of any person (4) [and the driver] intentionally and knowingly (5) fails to stop and render reasonable assistance." *Goar v. State*, 68 S.W.3d 269, 272 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *see Steen v. State*, 640 S.W.2d 912, 915 (Tex. Crim. App. 1982).

In this case, there is no dispute that Appellant was the driver of a vehicle, that she was involved in an accident, and that the accident resulted in the death of a person. Furthermore, there is no dispute that Appellant initially stopped at the accident scene. Appellant was charged with violating these statutes by intentionally or knowingly failing to remain and failing to render reasonable assistance to Betts when it was apparent that he was in need of medical treatment. Thus, the issue is this appeal is whether Appellant sufficiently remained at the scene in order to comply with the requirement of rendering reasonable assistance.

By the express terms of the statutes, a person involved in a vehicle accident must remain at the scene until she renders reasonable assistance to the injured person. We disagree with Appellant's assertion that she "did everything in her power to provide aid to her fallen husband." Reasonable assistance includes transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary. TRANSP. § 550.023(3). This requirement at a minimum means that the operator must remain at the scene until emergency personnel or someone whom the driver knows is capable of providing emergency medical assistance has arrived at the scene. *Aguilar v. Sate*, 202 S.W.3d 833, 839 (Tex. App.—Waco 2006, pet. ref'd).

Chief John Michael Griffin of the Seymour Police Department testified that (1) a deputy sheriff's house was fifty feet away from the scene of the accident, (2) an

Allsup's convenience store that was open twenty-four hours a day was 600 to 900 feet away, (3) the sheriff's department was five blocks away, and (4) the Rusty Spur was about 300 feet away from the scene of the accident. All of these places were closer to the accident than Appellant's residence. Chief Griffin testified that he drove from the site of the accident to where Appellant lived at the time of the accident and that it took him two minutes and forty-five seconds. Chief Griffin further testified that Betts was in danger of being hit by another vehicle because Betts was lying in the middle of Washington Street, which is one of the more traveled roads in town. Officer Rick Hill of the Seymour Police Department and Deputy Kathy Moore of the Baylor County Sheriff's Department testified that Betts was lying not more than fifty feet from Deputy Moore's front porch and that her marked police car was visible from the street.

Even though Appellant asserts that she sought the most reliable and certain aid under the circumstances, the State presented sufficient evidence that she failed to provide reasonable assistance before she left the scene. As noted above, Appellant ignored several close-by resources for seeking medical attention for Betts, while leaving him in the street at 2:00 a.m.[1] When Appellant arrived at home, she did not call for emergency medical assistance for Betts. *See McGuire v. State*, 493 S.W.3d 177, 207 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Instead, she persuaded Kristi and Henry to engage in a purported search for Betts. Examining these facts in the light most favorable to the jury's verdict, there was legally sufficient evidence that Appellant failed to remain at the scene or render reasonable medical assistance

---

[1]As noted in *Moore v. State*, 145 S.W.2d 887, 888–89 (Tex. Crim. App. 1940): "Certainly decency and common respect dictate that mutilated humans should not be allowed to lie around in the street as mute evidence of the destruction wrought by speed."

in order to meet the requirements of the "failure to render aid" statute. We overrule Appellant's third issue.

In Appellant's first issue, she contends that her rights to due process and to a presumption of innocence were violated by her appearance before the jury in jail clothing. At some point in the proceedings, Appellant appeared before the jury panel in jail-issued clothing. Appellant's trial counsel moved for a mistrial and requested that the trial court instruct the jury to disregard Appellant's clothing. The trial court overruled Appellant's motion for a mistrial and stated that making an instruction would call attention to Appellant's clothing. The trial court stated: "She doesn't look like she's in prison garb to me. She's in a pair of stretchy slacks and a T-shirt and there's nothing distinguishing her as a prisoner on what she's wearing at the present time."

If a defendant timely objects to being placed before the jury while wearing clothing that bears an indicia of incarceration, it is the duty of the trial court, the accused's attorney, the State's attorney, and the peace officers in control of the accused to offer the accused an opportunity to wear civilian clothes. *Randle v. State*, 826 S.W.2d 943, 944, 946 (Tex. Crim. App. 1992). Such a compulsion would violate the defendant's right to a fair trial and her right to be presumed innocent. *Id.* at 945. However, a defendant's rights are violated only where the clothing in question "bears the indicia of incarceration." *Id.* at 946; *Scott v. State*, 80 S.W.3d 306, 307 (Tex. App.—Fort Worth 2002, no pet.). It is the extent to which the defendant's clothing is communicative of her status as a prisoner (and inferentially a criminal) that determines whether or not she was denied a fair trial. *See United States v. Dawson*, 563 F.2d 149, 152 (5th Cir. 1977) (holding that the jail-issued khaki shirt and trousers did not give any indication in any way that the defendant was in confinement and did not deny the defendant the right to a fair trial). For

instance, in *Scott v. State*, the appellate court concluded that, although the jail-issued clothes did not have an express label saying "jail" on them, a juror who saw orange overalls marked P-5, P-6, No. 27, No. 25, would likely surmise that the defendant was wearing jail clothing. *Scott*, 80 S.W.3d at 308.

During trial, Appellant wore a pair of slacks and a T-shirt issued by the jail. There is no evidence that this clothing bore any indicia of incarceration. According to the trial court, Appellant did not look like she was in prison garb, and what she wore did not distinguish her as a prisoner. Because Appellant's clothing did not bear any indicia of incarceration, Appellant's rights to a fair trial and to the presumption of innocence were not violated. We overrule Appellant's first issue.

In Appellant's second issue, she contends that the trial court erred by improperly commenting on the weight of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979). Appellant also contends that the State tainted the jury by directly asking the trial court for its approval of a statement made during closing arguments. Appellant asserts that these combined errors were fundamental and harmed Appellant's right to a fair and impartial trial.

During closing arguments, defense counsel stated: "The evidence was the law requires you to remain at the scene of the accident unless you comply with that section of the law which says that you have got to provide reasonable assistance"; "[y]ou can't provide medical attention . . . , but you are going to stay at the scene. Does that make sense to you? . . . No. And that's why the statute specifically provides that your reasonable assistance can be accomplished by arranging for transportation"; "[t]he law tells you that. She has to stay there unless she . . . arrange[s] for alternate transportation, and she did"; and "[b]ut common sense also tells you that based upon your instructions, if, in fact, she arranged for transportation for Jeff Betts, she is innocent of failure to render aid."

After trial counsel's closing argument, the State informed the trial court that Appellant had made a misstatement of the law to the jury. The State argued that the statute requires the operator of the vehicle to remain at the scene of the accident "until" she complies with the requirements of Section 550.023. Accordingly, the State asserted that the operator has to make arrangements for transportation before leaving the scene. The State requested that the court instruct the jury on the correct law because counsel's statements would probably contaminate the panel.

After a lengthy debate about the interpretation of the applicable law, the trial court sustained the objection and informed the jury that there may have been a misstatement of law. The trial court instructed the jury that "[y]ou have to immediately stop and remain at the scene to make arrangements for transportation or transporting. So I don't think you can transport and remain at the scene, but you can - -." Appellant objected at this point and argued that the trial court had made a comment on the weight of the evidence. The trial court responded that the court's statements were part of the law. The trial court instructed the jury to disregard Appellant's counsel's statement that "making arrangements for transportation" means the jury needs to find Appellant not guilty. The trial court further instructed the jury as follows: "Because the law states, No. 1, that she is required to remain at the scene of the accident until she complies with making arrangements." Appellant objected again.

A trial court shall not comment upon the weight of the evidence or make any remark calculated to convey to the jury its opinion of the case at any stage of the trial before the return of the verdict. *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003); CRIM. PROC. § 38.05. An improper comment on the weight of the evidence implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the

case. *Hoang v. State*, 997 S.W.2d 678, 681 (Tex. App.—Texarkana 1999, no pet.). A trial court's comments can constitute fundamental error if the comments rise to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); *see Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000).

However, it is improper to argue contrary to the law contained in the jury charge. *State v. Renteria*, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998). A trial court may correct a misstatement or misrepresentation in the testimony or a misstatement of the law, explain a point of law or aspect of the legal or justice system, or clarify a point of confusion. *Jasper*, 61 S.W.3d at 421; *Eckert v. State*, 672 S.W.2d 600, 607 (Tex. App.—Austin 1984, pet. ref'd). A trial court may declare in the jury's presence that a statement is "not the law." *Williams v. State*, 191 S.W.3d 242, 252–53 (Tex. App.—Austin 2006, no pet.). Generally, a correct statement of the law by a trial court, even during trial, is not reversible as a comment on the weight of the evidence. *Moore v. State*, 505 S.W.2d 842, 844 (Tex. Crim. App. 1974).

Appellant's attorney misstated the law during closing arguments when he argued that Appellant was required to remain at the scene unless she fulfilled the requirements of Section 550.023 and could, therefore, be acquitted if she left the scene with the intention of making arrangements for transportation. The trial court's statement, "So I don't think you can transport and remain at the scene, but you can - -," appears to explain to the jury that, if the operator is transporting the person to the hospital, the operator cannot also remain at the scene. We do not know what the trial court was going to say about what the operator could do in that situation because counsel interrupted the court's explanation. The trial court's statement—that Appellant was required to remain at the scene until she made arrangements for

transportation or transporting—was a correction of a misstatement of law. The trial court properly declared that Appellant's counsel's statement was not a correct statement of the law, and this was not an improper comment on the weight of the evidence.

Appellant also asserts that the State's request for the trial court's approval of the State's explanation of the law during closing argument further tainted the jury. In the State's closing arguments, the prosecutor reiterated that the defense had misstated the law and argued: "To leave that scene and make any arrangements for transportation to a physician or a hospital would not be in compliance with the statute." Appellant objected to this statement, and the trial court overruled the objection. The State continued, "If this defendant, [Appellant], left the scene of this accident, it really doesn't matter what she did over on River Street or wherever else it was. Once she left the scene, she violated the statute. Judge, is that a fair statement?" The trial court refused to comment and instructed the jury to disregard the State's question to the trial court.

Generally, an instruction to disregard cures the prejudicial effect of an impermissible comment during jury arguments. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995) (citing *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989); *Anderson v. State*, 633 S.W.2d 851, 855 (Tex. Crim. App. 1982)). However, a comment may be so egregious or inflammatory as to render the instruction ineffective in curing the prejudice. *Williams v. State*, 417 S.W.3d 162, 172 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Woodall v. State*, 77 S.W.3d 388, 400 (Tex. App.—Fort Worth 2002, pet. ref'd).

The trial court did not comment on the State's question and instructed the jury to disregard the State's question. From this record, we cannot conclude that the prosecutor's statement was so egregious or inflammatory that it was not cured by

the trial court's instruction to disregard. Additionally, because we found that the trial court did not improperly comment on the weight of the evidence, the prosecutor's comment did not cause any harm to Appellant's right to a fair and impartial trial or to the presumption of innocence. We overrule Appellant's second issue.

## *This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


February 21, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Willson, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.