# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-19-00226-CR

Walter Dennis Dunlap, Appellant

v.

The State of Texas, Appellee

FROM COUNTY COURT AT LAW NO. 1 OF COMAL COUNTY
NO. 2016 CR 1971, THE HONORABLE RANDAL C. GRAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Walter Dennis Dunlap was charged with driving while intoxicated with a blood-alcohol concentration of 0.15 or more. *See* Tex. Penal Code § 49.04. Before trial, Dunlap filed a motion to suppress evidence obtained during the police investigation after a traffic stop. The trial court denied the motion. Dunlap elected to have the trial court assess his punishment if the jury found him guilty. During the trial, Deputies Chris Gerhardt and Cameron Celli, who were involved in the investigation, and Nick Pierce, who was a forensic toxicologist, all testified, and recordings from cameras inside Deputies Gerhardt's and Celli's patrol cars were admitted into evidence and played for the jury. The jury found Dunlap guilty of the charged offense, and the trial court sentenced Dunlap to 365 days' confinement in county jail. *See id.* § 12.21. Following his conviction, Dunlap filed a motion for new trial, which was overruled by operation of law. *See* Tex. R. App. P. 21.8. In four issues on appeal, Dunlap contends that the trial court erred by failing to grant his motion to suppress, by admitting the recordings mentioned above into

evidence, and by failing to convene a hearing on his motion for new trial. We will affirm the trial court's judgment of conviction.

## DISCUSSION

**Motion to Suppress**

*Detention*

In his first issue on appeal, Dunlap contends that he was unreasonably detained twice after being pulled over during a traffic stop and that, therefore, the trial court should have suppressed all evidence related to events occurring after the start of the initial detention. During the suppression hearing, Deputies Gerhardt and Celli testified and recordings from cameras in their patrol cars were admitted into evidence and played for the trial court. The following summarizes the testimony and other evidence from the suppression hearing.

Deputy Gerhardt was on patrol during the holiday weekend before July 4. Because it was a holiday weekend, "two traffic units" were dedicated to a "driving while intoxicated task force" to investigate potential driving-while-intoxicated offenses while allowing other patrol officers to stay on the road and answer calls as needed. At the suppression hearing, Deputy Gerhardt explained that he had training in performing field-sobriety tests and in investigating intoxication offenses but was not assigned to the driving-while-intoxicated task force that weekend. While on duty, Deputy Gerhardt observed a driver later identified as Dunlap appearing to speed. After using the radar gun inside his patrol car, Deputy Gerhardt determined that Dunlap was driving 76 miles per hour in a 60-miles-per-hour zone and initiated a traffic stop. While talking with Dunlap at his car, Deputy Gerhardt noticed "a strong odor of alcoholic beverage emitting from his breath" and noticed that Dunlap was having difficulty producing

2

his proof of insurance and had bloodshot and glassy eyes. During their conversation, Dunlap stated that he had been at the lake wakeboarding but denied having anything to drink. At the suppression hearing, Deputy Gerhardt explained that he returned to his patrol car to ask dispatch to run a warrant check, to write Dunlap a warning, and to request assistance from Deputy Celli, who had been assigned to the driving-while-intoxicated task force.

About twelve minutes later, Deputy Gerhardt returned to Dunlap's car and asked Dunlap if he had consumed any alcohol that day. Dunlap denied drinking any alcohol, and Deputy Gerhardt asked Dunlap to step out of the car and then asked Dunlap if he would consent to performing any field-sobriety tests. Dunlap refused to perform any sobriety tests, and Deputy Gerhardt placed Dunlap in handcuffs and directed Dunlap to sit in the back of the patrol car. However, Deputy Gerhardt explained to Dunlap that he was not under arrest and was being detained for his safety and for suspicion of driving while intoxicated. At the suppression hearing, Deputy Gerhardt testified that he detained Dunlap in the patrol car for his safety because they were beside a busy highway and because it was a very hot day. Shortly after he directed Dunlap to sit in the patrol car, Deputy Gerhardt learned that Dunlap's license was not valid because he had not paid a surcharge for previously having driven without any liability insurance.

While Dunlap was in Deputy Gerhardt's patrol car, Deputy Celli arrived on the scene and took over the investigation. At the suppression hearing, Deputy Celli testified that he had received training in field-sobriety testing and in investigating intoxication offenses. Shortly after Deputy Celli arrived, Deputy Gerhardt asked Dunlap to step out of the patrol car and removed the handcuffs. Dunlap was in Deputy Gerhardt's patrol car for approximately two to three minutes.

3

When interacting with Dunlap, Deputy Celli observed "a strong odor of alcohol emitting from . . . Dunlap" and noticed that Dunlap had "red, bloodshot and glassy eyes" and "couldn't walk in a straight fashion and kind of zigzagged." At the suppression hearing, Deputy Celli described Dunlap as appearing "heavy footed as he was walking" and as having "a front to back sway." Deputy Celli asked Dunlap if he had anything to drink that day, and Dunlap initially denied having had anything to drink but later answered the question by stating that any amount he had to drink was "insignificant." While talking with Dunlap, Deputy Celli asked Dunlap to submit to field-sobriety testing, but Dunlap refused. Deputy Celli then informed Dunlap that he was being arrested for driving while intoxicated and placed Dunlap in handcuffs.

After the hearing, the trial court denied the motion to suppress and issued findings of fact and conclusions of law supporting its ruling. Specifically, the court found Deputies Gerhardt and Celli to be credible witnesses and made the following findings and conclusions:

Deputy Gerhardt observed Dunlap driving 76 miles per hours in a 60 miles per hour zone.

Deputy Gerhardt could smell alcohol from Dunlap.

Dunlap's eyes were bloodshot, red, and glassy.

Dunlap stated that he was coming from the lake on the holiday weekend.

Deputy Gerhardt had to ask Dunlap to provide his proof of insurance more than once.

Deputy Gerhardt returned to his patrol car to run Dunlap's information and subsequently learned that Dunlap's license was invalid.

Deputy Gerhardt asked another unit to perform an investigation regarding whether Dunlap was driving while intoxicated because extra units were on hand for this purpose over the holiday weekend.

Deputy Gerhardt was making arrangements for another patrol unit to assist him while he was in his patrol car.

4

Deputy Gerhardt returned to Dunlap's car and asked Dunlap if he would perform some field-sobriety tests.

Dunlap refused to perform the requested testing.

Deputy Gerhardt placed Dunlap in handcuffs and told Dunlap that he was being detained but not arrested.

Dunlap was detained for two minutes before Deputy Celli arrived.

Deputy Gerhardt had probable cause to initiate a traffic stop after observing Dunlap commit a traffic violation.

Deputy Gerhardt had reasonable suspicion to detain Dunlap to investigate whether Dunlap committed the offense of driving while intoxicated.

No evidence was obtained in violation of any governing law.

No evidence should be suppressed in this case.

On appeal, Dunlap contends that the trial court erred by denying his motion to suppress because he was detained twice for an unreasonable amount of time after the traffic stop was initiated and that those two detentions did not further the investigation. More specifically, Dunlap argues that he was unreasonably delayed for twelve minutes when Officer Gerhardt returned to his car after speaking with Dunlap the first time and that he was again unreasonably detained for two minutes while sitting in the back of Deputy Gerhardt's patrol car. Moreover, Dunlap argues that the delay was unnecessary because Deputy Gerhardt could have performed a driving-while-intoxicated investigation himself. Further, Dunlap asserts that no investigative work was being performed during those detentions and that Deputy Gerhardt was simply waiting for another officer to arrive. Finally, Dunlap urges that all evidence related to the portion of the traffic stop following the start of the first detention should have been suppressed because "[t]he convenience of the officers never justifies a detention."

5

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In general, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law." *See State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see also Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). Moreover, courts "consider only the evidence adduced at the suppression hearing because the ruling was based on that evidence rather than evidence introduced later" unless "the suppression issue has been consensually relitigated by the parties during trial." *Herrera v. State*, 80 S.W.3d 283, 290-91 (Tex. App.—Texarkana 2002, pet. ref'd) (op. on reh'g). A trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory, but "a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it." *Story*, 445 S.W.3d at 732.

6

"Routine traffic stops are analogous to investigative detentions." *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, pet. dism'd, untimely filed); *see also State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011) (describing types of interactions between citizens and law-enforcement personnel). Investigative detentions are less intrusive than arrests, *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011), and an officer may initiate a traffic stop if he has reasonable suspicion that a crime is about to be committed or has been committed, *see Guerra v. State*, 432 S.W.3d 905, 911 (Tex. Crim. App. 2014). For reasonable suspicion to exist, an actual violation does not need to have occurred; rather, it is only necessary that "the officer reasonably believed a violation was in progress." *Green v. State*, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref'd); *see Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (noting that officer may briefly detain person for investigative purposes on less than probable cause where specific and articulable facts along with inferences from those facts reasonably warrant detention). "In assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997); *see also Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (explaining that "[t]his standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant"). Moreover, the assessment is made in light of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Provided that the traffic stop is based on reasonable suspicion, then the detention "does not violate Texas law." *Guerra*, 432 S.W.3d at 911.

In addressing whether a stop was supported by reasonable suspicion, reviewing courts must consider whether the officer's actions were justified at the inception and whether the circumstances justifying the stop are reasonably related to the seizure's scope. *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). "[T]he general rule is that an investigative stop can last no longer than necessary to effect the purpose of the stop." *Id.* "During a traffic stop, an officer may demand identification, a valid driver's license, and proof of insurance from the driver, and may also check for outstanding warrants." *Simpson v. State*, 29 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Further, "an officer is entitled to request information concerning . . . the driver's destination[ ] and the purpose of the trip." *McQuarters v. State*, 58 S.W.3d 250, 255-56 (Tex. App.—Fort Worth 2001, pet. ref'd).

"If during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see Powell v. State*, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd); *see also Woodard*, 341 S.W.3d at 414 (explaining that information known to officer gave him probable cause to arrest defendant for driving while intoxicated or reasonable suspicion to detain and administer field-sobriety tests). Additionally, "a delay in an officer's required investigation to confirm or dispel the officer's suspicions of the suspect and a resultant prolonged detention is reasonable under the Fourth Amendment when the delay furthers legitimate law enforcement purposes." *Belcher v. State*, 244 S.W.3d 531, 539 (Tex. App.—Fort Worth 2007, no pet.); *see also Kothe*, 152 S.W.3d at 63 (explaining that analysis under Fourth Amendment "requires a balance between the public interest served and the individual's right to be free from arbitrary detentions and intrusions"). "Legitimate law enforcement purposes include a delay to permit the arrival of a DWI enforcement

8

officer so that the supervisory officer initiating the stop can return to duty." *Belcher*, 244 S.W.3d at 541. "When a traffic stop detention is prolonged by a reasonable delay to comply with legitimate police policy, no Fourth Amendment violation has occurred." *Bullock v. State*, 426 S.W.3d 226, 231 (Tex. App.—Houston [1st Dist.] 2012, no pet.). When determining whether a legitimate law-enforcement purpose justified the detention, "the key inquiry is not whether a less intrusive alternative was available to law enforcement officers, but whether the police acted unreasonably in failing to choose that alternative." *Hartman v. State*, 144 S.W.3d 568, 574 (Tex. App.—Austin 2004, no pet.).[1]

---

[1] In his brief, Dunlap contends that the only law-enforcement interests that can justify a detention are preventing an individual from fleeing in the event that something incriminating is found, minimizing the risk of harm to individuals and to police officers, and aiding the orderly completion of a search. However, we do not read any of the cases relied on by Dunlap for that proposition as excluding from legitimate law-enforcement interests brief detentions to allow for the arrival of a driving-while-intoxicated-task-force officer when police officers have reasonable suspicion to believe that an individual committed the offense of driving while intoxicated. *See Rodriguez v. United States*, 575 U.S. 348, 350, 358 (2015) (explaining that detention after completion of traffic stop to conduct drug sniff of car was unreasonable seizure but remanding case to determine whether detention was justified by reasonable suspicion); *Bailey v. United States*, 568 U.S. 186, 190, 199, 202 (2013) (deciding that detention of individual who had left home before home was searched under authority of search warrant and had traveled one mile away was unreasonable because detention "incident to the execution of a search warrant [is] limited to the immediate vicinity of the premises to be searched" unless search was "justified by some other rationale"); *United States v. Sharpe*, 470 U.S. 675, 683, 687, 688 (1985) (finding no "delay unnecessary to the legitimate investigation" where individual was delayed for twenty minutes by one law-enforcement officer while waiting for arrival of drug-enforcement agent who had previously initiated investigation); *Florida v. Royer*, 460 U.S. 491, 505, 507-08 (1983) (determining that removing individual to interrogation room at airport did not serve legitimate law-enforcement purpose justifying initial detention and that defendant was illegally detained in room when he consented to search of his luggage); *Michigan v. Summers*, 452 U.S. 692, 693, 705-06 (1981) (upholding arrest of individual who was detained by police officers while they searched his home under authority of search warrant); *see also United States v. Campbell*, 912 F.3d 1340, 1353, 1355, 1356 (11th Cir. 2019) (determining that officer's twenty-five second extension of detention for purpose of investigating crimes beyond traffic offense by asking questions about contraband in vehicle was unlawful in absence of reasonable suspicion).

As found by the trial court, Deputy Gerhardt observed Dunlap commit a traffic offense by driving 76 miles per hour in a 60-miles-per-hour zone. *See* Tex. Transp. Code §§ 545.351-.352. Accordingly, Deputy Gerhardt had reasonable suspicion to initiate a traffic stop. *See Icke v. State*, 36 S.W.3d 913, 916 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (determining that officer had reasonable suspicion to initiate traffic stop where officer observed defendant speeding and confirmed that observation by using radar gun to estimate defendant's speed). In addition, the trial court found that Deputy Gerhardt detected a strong odor of alcohol when he interacted with Dunlap at his car and noticed that Dunlap was having difficulty producing his proof of insurance and that his eyes were red and bloodshot. Further, as found by the trial court, the traffic stop occurred on a holiday weekend, and Dunlap admitted that he had driven from the lake. The trial court's findings are supported by the record. In light of those findings, including the finding addressing Deputy Gerhardt's observation of Dunlap's speeding, we conclude that Deputy Gerhardt had reasonable suspicion to detain Dunlap to investigate whether he committed the offense of driving while intoxicated. *See* Tex. Penal Code § 49.04; *see also Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (explaining that erratic driving and post-driving behavior such as inability to follow directions and having bloodshot eyes can logically raise inference that individual is intoxicated at time of driving); *Shakespeare v. State*, No. 03-00-00707-CR, 2001 WL 421003, at *3 (Tex. App.—Austin Apr. 26, 2001, no pet.) (op., not designated for publication) (determining that officer had reasonable suspicion to detain defendant to investigate whether he committed offense of driving while intoxicated, in part, because officer observed defendant commit traffic offense and detected odor of alcohol on defendant's breath).

Regarding the length of the detention, which Dunlap characterizes as two detentions, the trial court found that during the initial detention, Deputy Gerhardt returned to his patrol car to determine whether Dunlap had any warrants out for his arrest and to run his license and requested the assistance of an officer from a driving-while-intoxicated task force because officers had been assigned to the task force for the holiday weekend. Those findings are supported by testimony and other evidence from the hearing, and the recording from Deputy Gerhardt's dashboard camera showed that Deputy Gerhardt did not learn that Dunlap's license was invalid until after the second detention began. *Cf. Richardson v. State*, 494 S.W.3d 302, 304 (Tex. App.—Waco 2015, no pet.) (noting that "[i]t is only after this computer check is completed, and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen, that the traffic-stop investigation is fully resolved"). In addition, when Deputy Gerhardt returned to Dunlap's car the second time, he continued the investigation by asking Dunlap questions about whether he had been drinking and if he would agree to perform field-sobriety tests, which he refused to perform. Following that refusal, Dunlap was further detained for approximately two to three minutes before Deputy Celli arrived to take over the investigation.

When confronted with delays similar to the fifteen-to-sixteen minute one at issue here and even longer ones, our sister courts of appeals have determined that the lengths of those detentions were reasonable when undertaken for the law-enforcement purpose of allowing a driving-while-intoxicated-task-force officer to take over an investigation and allow the officer initiating the traffic stop to return to his duties. *See Cagle v. State*, 509 S.W.3d 617, 625 (Tex. App.—Texarkana 2016, no pet.) (deciding that delay of twenty-one minutes to allow another officer to conduct driving-while-intoxicated investigation "served legitimate law enforcement

11

purposes" and "was not unreasonable"); *Bullock*, 426 S.W.3d at 232 (finding fifteen minute delay "was reasonable in light of the public policies served by the role of the DWI task force"); *Belcher*, 244 S.W.3d at 541, 542 (determining that delay of twenty-seven minutes until task-force officer could arrive was not unreasonable). In light of that authority and given our standard of review, we must conclude that the delays at issue in this case were not unreasonable, particularly when Deputy Gerhardt continued to perform tasks throughout the detention related to the initiation of the traffic stop and the investigation of whether Dunlap committed the offense of driving while intoxicated.

For these reasons, we overrule Dunlap's first issue on appeal.

*Deputy Gerhardt Turning Off His Microphone*

In his second issue on appeal, Dunlap contends that the trial court should have suppressed evidence regarding the traffic stop and subsequent detention because the recording from Deputy Gerhardt's patrol car shows that Deputy Gerhardt committed a criminal offense after initiating the traffic stop. In particular, Dunlap notes that when Deputy Gerhardt returned to his car after first talking with Dunlap, Deputy Gerhardt turned off his microphone. Further, Dunlap points to testimony from Deputy Gerhardt at the suppression hearing in which he admitted that he turned off his microphone even though he knew that an investigation was being conducted. Moreover, Dunlap urges that Deputy Gerhardt's conduct violated section 37.09 of the Penal Code, which specifies that a person commits an offense "if, knowing that an investigation or official proceeding is pending or in progress, he . . . alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." Tex. Penal Code § 37.09(a)(1). Building

12

on these arguments, Dunlap contends that the trial court should have excluded the portions of the recordings documenting and testimony describing the events occurring after Deputy Gerhardt's microphone was turned off because the evidence was obtained in violation of a Texas statute and, therefore, could not be admitted under the Texas exclusionary rule.[2] *See* Tex. Code Crim. Proc. art. 38.23.

To be guilty of an offense under section 37.09, there must be "proof of a specific intent to impair the verity, legibility or availability of the item as evidence." *Rabb v. State*, 387 S.W.3d 67, 71 (Tex. App.—Amarillo 2012), *aff'd in part, remanded in part*, 434 S.W.3d 613 (Tex. Crim. App. 2014); *see Stewart v. State*, 240 S.W.3d 872, 874 (Tex. Crim. App. 2007) (explaining that statute "requires *intent* as to a particular result, namely, impairing a thing's availability as evidence"). Although Deputy Gerhardt admitted at the suppression hearing that he turned off his microphone even though he knew an investigation was underway, no evidence was presented during the hearing indicating that Deputy Gerhardt turned off the microphone with

_____

[2] As support for his arguments, Dunlap refers to an opinion by the Court of Criminal Appeals. *See Wilson v. State*, 311 S.W.3d 452 (Tex. Crim. App. 2010). However, we believe that *Wilson* is distinguishable from this case. In *Wilson*, the defendant called the police to report that he found a dead man while walking home. *Id.* at 454. After receiving information that linked the defendant to the murder, one of the investigating officers "fabricated a forensic lab report" to state that the defendant's "fingerprints were found on the magazine clip retrieved from the crime scene" even though no "prints were found on the clip." *Id.* Further, the police officer admitted that he fabricated the report in order to get the defendant "to respond to his questioning," and the defendant subsequently confessed to shooting the man. *Id.* at 454, 455. On appeal, the Court of Criminal Appeals determined that the police officer violated section 37.09 because he acted with the intent to affect the course of an investigation and explained that "a violation of section 37.09, a state law directly related to the acquisition and use of evidence in criminal investigations and proceedings, bars the admission of other evidence obtained through that violation, even when the defendant's confession is 'voluntary' under federal constitutional standards." *Id.* at 464. In contrast, Dunlap did not confess to any criminal misconduct as a result of Deputy Gerhardt's decision to turn off his microphone, and Deputy Gerhardt did not testify that he turned off the microphone intentionally in an effort to impair the recording's "verity, legibility, or availability as evidence" or otherwise affect the investigation. *See* Tex. Penal Code § 37.09(a)(1).

the intent to impair the verity, legibility, or availability of the recording as an item of evidence. *See State v. Robinson*, 334 S.W.3d 776, 779 (Tex. Crim. App. 2011) (explaining that "a defendant who moves for suppression under Article 38.23 due to the violation of a statute has the burden of producing evidence of a statutory violation"). On the contrary, Deputy Gerhardt's testimony and the recording itself demonstrate that Deputy Gerhardt did not turn off his microphone until after he stopped interacting with Dunlap the first time and then turned his microphone back on before talking with Dunlap during their second interaction. Further, the trial court found, based on the testimony and other evidence presented at trial, that Deputy Gerhardt did not interact with Dunlap while the microphone was turned off and further found that during the time in which the microphone was off, Deputy Gerhardt was running Dunlap's information and requesting the assistance of a task-force officer. *Cf. Gonzales v. State*, 67 S.W.3d 910, 912 (Tex. Crim. App. 2002) (observing that evidence is not obtained in violation "of a provision of law if there is no causal connection between the illegal conduct and the acquisition of evidence"). Those findings are supported by the testimony and other evidence presented during the suppression hearing.

In light of the preceding and given our standard of review, we cannot conclude that the trial court erred when it denied Dunlap's motion to suppress after determining that, lacking the requisite mens rea for violating section 37.09, Deputy Gerhardt did not obtain evidence in violation of any governing law. Accordingly, we overrule Dunlap's second issue on appeal.[3]

---

[3] In this issue, although Dunlap contends that the trial court should have suppressed the evidence in question, Dunlap also refers to portions of the record in which he sought to question Deputy Gerhardt during the trial about his decision to turn off his microphone before the State successfully objected to the questioning on relevancy grounds and in which the trial court denied his request for a jury instruction regarding whether the jury should disregard the evidence in the recordings under the exclusionary rule found in article 38.23 of the Code of Criminal Procedure.

14

**Admission of Evidence**

In his third issue on appeal, Dunlap argues that the trial court erred when it admitted into evidence recordings from Deputy Gerhardt's dashboard camera, from Deputy Celli's dashboard camera, and from a camera inside Deputy Celli's patrol car because those recordings depicted him in handcuffs. When challenging the trial court's ruling, Dunlap contends that admitting the recordings without redacting the portions showing him in handcuffs infringed on his constitutional right to a presumption of innocence.

---

To the extent that Dunlap is challenging those rulings in addition to challenging the trial court's suppression ruling, those arguments are multifarious. *See Davidson v. State*, 249 S.W.3d 709, 717 n.2 (Tex. App.—Austin 2008, pet. ref'd) (explaining that issue containing "more than one specific ground of error is a multifarious one" and that appellate courts "may refuse to consider it"). In any event, the trial court considered the issue of whether Deputy Gerhardt committed an offense based on the evidence presented during the suppression hearing and denied the motion to suppress. In light of the evidence from the hearing, we would be unable to conclude that the trial court abused its discretion by determining at trial that the evidence was not relevant. *See* Tex. R. Evid. 401 (explaining that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action"). Moreover, Dunlap does not point to a portion of the record in which he made an offer of proof setting out evidence regarding Deputy Gerhardt's alleged violation beyond that introduced during the suppression hearing. *See id.* R. 103 (explaining that if party objects to exclusion of evidence, party must inform trial court of substance of evidence "by an offer of proof" to preserve claim for review "unless the substance was apparent from the context"); *Allen v. State*, 473 S.W.3d 426, 442-43 (Tex. App.—Houston [14th Dist.] 2015) (stating that party challenging ruling excluding evidence must present offer of proof), *pet. dism'd, improvidently granted*, 517 S.W.3d 111 (Tex. Crim. App. 2017). During the trial, no evidence was presented indicating that by turning off his microphone, Deputy Gerhardt intended to impair the recording's "verity, legibility, or availability as evidence" as required by the Penal Code. *See* Tex. Penal Code § 37.09(a)(1). Accordingly, we would be unable to conclude that the trial court erred by refusing Dunlap's request for a 38.23 instruction, *see Totten v. State*, 570 S.W.3d 387, 389-90, 392 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (determining that trial court did not err by failing to provide article 38.23 instruction where there was no fact issue and explaining that to be entitled to instruction under article 38.23 "(1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct" (quoting *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008))).

15

For the purpose of resolving this issue on appeal, we will assume without deciding that the admission of the recordings was error. *See Lucas v. State*, 791 S.W.2d 35, 55, 56 (Tex. Crim. App. 1989) (explaining that admission of evidence depicting defendant in handcuffs was error because it impacted "the constitutional presumption of innocence"); *Simon v. State*, No. 01-04-01212-CR, 2006 WL 1550020, at *3 (Tex. App.—Houston [1st Dist.] June 8, 2006, pet. ref'd) (mem. op., not designated for publication) (stating that appellate courts must find error from admission of videotape showing defendant in handcuffs unless record reflects "good and sufficient" reason for admitting evidence (quoting *Lucas*, 791 S.W.2d at 55)). An error stemming from a jury observing a defendant in handcuffs is constitutional error that is reviewed under Rule 44.2(a) of the Rules of Appellate Procedure. *See Davis v. State*, 195 S.W.3d 311, 316-17 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Coleman v. State*, No. 09-98-00036-CR, 1998 WL 637524, at *3 (Tex. App.—Beaumont Sept. 16, 1998, no pet.) (op., not designated for publication). *But see Simon*, 2006 WL 1550020, at *4 (reviewing error from admission of video showing defendant in handcuffs under Rule 44.2(b)). Under Rule 44.2(a), an appellate court "must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a). "Constitutional error does not contribute to the conviction or punishment if the jury's verdict would have been the same if the erroneous evidence had not been admitted." *Lovings v. State*, Nos. 03-14-00088, -00408-CR, 2016 WL 1084690, at *7 (Tex. App.—Austin Mar. 17, 2016, pet. ref'd) (mem. op., not designated for publication). Factors that appellate courts may consider when assessing harm include the nature of the error, whether the State emphasized the error, the implications of the error, and the weight that the jury would

16

likely have assigned to the error while deliberating. *See Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011).

The recording from Deputy Gerhardt's dashboard camera shows Dunlap in handcuffs for approximately thirty seconds before he was arrested and while he was being directed into Deputy Gerhardt's patrol car. *Cf. Simon*, 2006 WL 1550020, at *4 (determining that defendant was not harmed by admission of video showing him in handcuffs, in part, because video "was extremely short"); *Dennis v. State*, 925 S.W.2d 32, 41 (Tex. App.—Tyler 1995, pet. ref'd) (noting that video was "very short"). The recording from Deputy Celli's dashboard camera briefly shows Dunlap in handcuffs when he steps out of Deputy Gerhardt's patrol car before the handcuffs are immediately removed and later shows Dunlap in handcuffs for approximately seven minutes after Deputy Celli places Dunlap under arrest for driving while intoxicated. Although the time that Dunlap is depicted in handcuffs after being arrested is arguably not short, the jury could have reasonably expected that Dunlap would be placed in handcuffs after Deputy Celli placed Dunlap under arrest. *See Simon*, 2006 WL 1550020, at *4 (explaining that "the effect of the error is slight because the jury could have reasonably expected a suspect arrested for aggravated robbery to be handcuffed and taken into police custody at the scene"); *see also State v. Pringle*, No. 12-12-00286-CR, 2013 WL 3243525, at *3 (Tex. App.— Tyler June 25, 2013, pet. dism'd) (mem. op., not designated for publication) (observing that "most jurors are aware that the person who is on trial has been arrested for the charged offense" and "that the fact of an arrest [is] not overly prejudicial"). The recording from inside Deputy Celli's patrol car showed Dunlap inside the patrol car shortly after his arrest and while he was being transported to a hospital for a blood draw, and the video is approximately twenty-two minutes long. However, although the recording shows Dunlap with his hands behind his back, the

17

recording does not actually show Dunlap in handcuffs. *Cf. Avila v. State*, 15 S.W.3d 568, 574, 575 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (determining that there was no error from admission of post-arrest photographs of defendant because handcuffs were not visible in pictures and because pictures only showed defendant with his hands behind his back). Moreover, both Deputy Gerhardt and Deputy Celli testified without objection that Dunlap had been placed in handcuffs. *Cf. Dennis*, 925 S.W.2d at 41 (determining that admission of video showing defendant in handcuffs was harmless where testimony was presented at trial stating that defendant had been placed in handcuffs when he was arrested).

In addition, although the State referenced conduct displayed by Dunlap in the recordings during its opening and closing arguments, most of those references were to the video from inside Deputy Celli's patrol car in which no handcuffs were visible, to the portion of the video from Deputy Gerhardt's dashboard camera capturing the traffic stop and the interaction between Deputy Gerhardt and Dunlap before Dunlap gets out of the car, and to the portions of the recording from Deputy Celli's dashboard camera documenting Dunlap walking when he was not in handcuffs and interacting with Deputy Celli before he was arrested, and the State did not mention that either officer placed Dunlap in handcuffs. The State did refer to one portion of the recording from Deputy Celli's dashboard camera in which Dunlap had been placed in handcuffs but only mentioned the comments that Dunlap made at that time. Similarly, the State did mention handcuffs once during its closing argument, but the State did so when describing how Dunlap walked in one of the recordings as if he were handcuffed even though he was not.

Moreover, the jury is unlikely to have given much weight to the portions of the recordings showing Dunlap in handcuffs considering the overwhelming evidence presented at trial establishing his guilt. *See Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002)

18

(explaining that presence of overwhelming evidence of guilt can support determination that error is harmless under Rule 44.2(a)). During the trial, Pierce testified that he tested a blood sample that was collected from Dunlap, that the blood-alcohol concentration for the sample was between 0.205 and 0.227, and that the results showed that Dunlap had a blood-alcohol level that was more than double the legal limit.

In addition, Deputy Gerhardt testified that he initiated a traffic stop after using his radar gun to determine that Dunlap was driving sixteen miles over the speed limit on the weekend before the "Fourth of July" and that Dunlap stated that he had been at the lake wakeboarding before deciding to drive. Regarding their interactions with Dunlap, both Deputy Gerhardt and Deputy Celli stated that they could smell a "strong odor" of alcohol emitting from Dunlap's breath and noticed that Dunlap's eyes appeared bloodshot and glassy, and Deputy Gerhard testified that Dunlap had difficulty locating his proof of insurance. Further, Deputy Celli related that Dunlap "could not walk in a straight fashion," was zigzagging when he walked, "was heavy footed," was mispronouncing some of his words, and stated that he had an "insignificant" amount of alcohol after initially denying drinking anything containing alcohol. *See Kirsch*, 306 S.W.3d at 745 (explaining that evidence that would logically raise inference that individual is intoxicated includes, among other things, "erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to . . . follow directions, bloodshot eyes, [and] any admissions by the defendant concerning what, when, and how much he had been drinking"); *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (stating that "odor of alcohol on the person" is evidence of intoxication).

Further, Deputy Celli recalled that two officers had to help Dunlap walk into the hospital to get a blood sample and that Dunlap became "belligerent" and "aggressive" at

19

the hospital. *See Irion v. State*, 703 S.W.2d 362, 364, 365 (Tex. App.—Austin 1986, no pet.) (affirming conviction for driving while intoxicated, in part, based on testimony that defendant was "unusually belligerent" while being booked into jail). When describing Dunlap, Deputy Celli stated that he believed that Dunlap was intoxicated based on his observations of Dunlap. *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (providing that, in general, officer's testimony that individual is intoxicated provides sufficient evidence to establish element of intoxication). Moreover, Deputy Gerhardt explained that the officers found a Yeti cup in the center console of Dunlap's car containing a liquid that smelled like alcohol and found a can of beer in a cooler in the front passenger seat. *See Priego v. State*, 457 S.W.3d 565, 570, 571 (Tex. App.—Texarkana 2015, pet. ref'd) (upholding conviction in part because evidence showed that there was partially consumed bottle of alcohol inside car and that defendant smelled like alcohol). After the jury convicted Dunlap, no additional argument or evidence was presented before the trial court sentenced him.

For these reasons, we conclude beyond a reasonable doubt that the admission of the portions of the recordings in dispute did not contribute to Dunlap's conviction or punishment. Therefore, we overrule Dunlap's third issue.[4]

---

[4] In this issue, Dunlap contends that the trial court erred when it denied his objection to the admission of the recordings at trial, but he also references portions of the suppression hearing in which he argued that the recordings should be suppressed. To the extent that Dunlap is challenging the denial of his motion to suppress this evidence, we would also be unable to conclude that Dunlap was harmed by the trial court's decision not to suppress the recordings for the same reasons set out above. *See Tijerina v. State*, 334 S.W.3d 825, 835 (Tex. App.—Amarillo 2011, pet. ref'd) (reviewing erroneous denial of motion to suppress evidence on constitutional grounds under Rule of Appellate Procedure 44.2(a) and considering entire record).

**Hearing on Motion for New Trial**

In his fourth issue on appeal, Dunlap asserts that the trial court erred by failing to convene a hearing on his motion for new trial. In his motion for new trial, Dunlap argued, among other things, that the forensic toxicologist, Pierce, provided incorrect testimony regarding the effectiveness of preservatives in preventing a blood sample from fermenting and, therefore, that he was entitled to a new trial. In particular, Dunlap referred to portions of Pierce's testimony in which he stated that a scientific study demonstrated that sodium fluoride prevents the growth of yeast that could otherwise produce alcohol in a blood sample, but Dunlap asserted that this testimony was inaccurate. As support, Dunlap attached to his motion an affidavit from a chemist who averred that Pierce misinterpreted the study when he testified that sodium fluoride prohibits alcohol production in blood samples regardless of whether the sample was refrigerated and regardless of whether a particular type of yeast was present in the sample, and the chemist also referred to various scientific articles indicating that certain yeast can produce alcohol in biological samples and challenging the efficacy of sodium fluoride as a preservative. On appeal, Dunlap contends that his motion for new trial established that Pierce provided false testimony that violated his due-process rights and that the trial court erred by failing to convene a hearing on the matter.

Appellate courts review a trial court's decision to deny a hearing on a motion for new trial for an abuse of discretion. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). Accordingly, appellate courts reverse "only when the trial judge's decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Id.* (quoting *State v. Gonzalez*, 855 S.W.2d 692, 695 n.4 (Tex. Crim. App. 1993)). Moreover, the right to a hearing on a motion for new trial is not absolute. *See Torres v. State*, 4 S.W.3d 295, 296 (Tex.

21

App.—Houston [1st Dist.] 1999, no pet.). A trial court is not required to convene a hearing on a motion for new trial if the movant does not request a hearing. *See Gallegos v. State*, 76 S.W.3d 224, 228 (Tex. App.—Dallas 2002, pet. ref'd).

In general, to preserve a complaint for appellate review, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion" and that "the trial court . . . ruled on the request, objection, or motion, either expressly or implicitly . . . or . . . refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." Tex. R. App. P. 33.1(a). Although the record contains Dunlap's motion for new trial and a notice of presentation regarding Dunlap's motion for new trial, the trial court did not sign an order ruling on the motion for new trial, and the motion was overruled by operation of law. *See id.* R. 21.8. Moreover, Dunlap did not request a hearing in his motion for new trial or in his notice of presentation, and the record does not otherwise indicate that Dunlap made any attempt to request a hearing regarding his motion for new trial or that the trial court ruled on any request for a hearing. *See Gallegos*, 76 S.W.3d at 228 (observing that "the trial court could not have abused its discretion in failing to hold" hearing on motion for new trial when "nothing in the record . . . suggest[ed] that appellant wanted or requested a hearing on his motion").

Accordingly, we must conclude that Dunlap failed to preserve this issue for appellate consideration. *See Castro v. State*, No. 03-12-00730-CR, 2015 WL 1214402, at *5 (Tex. App.—Austin Mar. 13, 2015, pet. ref'd) (mem. op., not designated for publication) (deciding that defendant failed to preserve issue regarding trial court's failure to hold hearing on motion for new trial because "motion for new trial was overruled by operation of law," because defendant did not "object . . . to the failure to conduct a hearing," and because defendant did not timely present his motion for new trial); *Roque v. State*, No. 01-02-00933-CR, 2003 WL 22310916,

22

at *1, *2 (Tex. App.—Houston [1st Dist.] Oct. 9, 2003, pet. ref'd) (mem. op., not designated for publication) (determining that defendant failed to preserve issue asserting that trial court erred by failing to convene hearing on motion for new trial where motion for new trial was overruled by operation of law and where defendant made no "attempt to request a hearing on his motion for new trial"); *Oestrick v. State*, 939 S.W.2d 232, 234, 235 (Tex. App.—Austin 1997, pet. ref'd) (concluding that defendant failed to preserve for appellate review issue regarding hearing on motion for new trial even where request for hearing was included in motion for new trial because motion for new trial was overruled by operation of law meaning that "the trial court's failure to conduct a hearing . . . is simply a 'failure to rule' on the request for a hearing" and because "there is no indication that appellant ever attempted to schedule a hearing or specifically brought to the trial court's attention his desire for one"); *see also Bermuda v. State*, 471 S.W.3d 572, 574, 575 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (explaining that defendant preserved issue regarding trial court's failure to convene hearing on motion for new trial when defendant made multiple requests for hearing in motion for new trial, when defendant attached proposed orders to set hearing and to dispose of motion based on argument from hearing, when motion was timely presented, and when trial court signed order denying motion for new trial).

For these reasons, we overrule Dunlap's final issue on appeal.

## CONCLUSION

Having overruled all of Dunlap's issues on appeal, we affirm the trial court's judgment of conviction.

23

_____
Thomas J. Baker, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   April 24, 2020

Do Not Publish